UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| VITAS KAZLAUSKAS<br>*Plaintiff*, | )<br>)<br>) | 3:18-CV-00544 (KAD) |
| v. | )<br>) | |
| NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security, U.S.A.<br>*Defendant*. | )<br>)<br>) | SEPTEMBER 23, 2019 |

**MEMORANDUM OF DECISION**

Kari A. Dooley, United States District Judge

The Plaintiff, Vitas Kazlauskas, (the "Plaintiff") brings this administrative appeal pursuant to 42 U.S.C. § 405(g). He appeals the decision of defendant Nancy A. Berryhill, acting Commissioner of the Social Security Administration, (the "Commissioner") denying his applications for disability insurance and supplemental security income benefits pursuant to Title II and Title XVI of the Social Security Act (the "Act"). The Plaintiff moves to reverse the Commissioner's decision because the administrative law judge failed to account for his severe physical impairments adequately, misidentified his past relevant work, and incorrectly concluded that there is work in the national economy that he can perform. Conversely, the Commissioner asserts that the ALJ's decision is fully supported by substantial evidence in the record and she seeks an order affirming the decision of the ALJ. For the reasons set forth below, the Plaintiff's Motion to Reverse [ECF No. 26] is DENIED and the Commissioner's Motion to Affirm [ECF No. 27] is GRANTED.

**Standard of Review**

It is well-settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record.

*See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin,* 523 Fed. Appx. 58, 59 (2d Cir. 2013). Substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can reject the Commissioner's findings of facts "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.* 683 F.3d 443, 448 (2d Cir. 2012). Stated simply, "if there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013).

**Factual and Procedural History**

On March 27, 2015, the Plaintiff filed applications for disability insurance and supplemental security income benefits pursuant to Title II and Title XVI of the Act, alleging an onset date of March 15, 2013. The claim was denied initially on October 1, 2015 and upon reconsideration on January 15, 2016. Thereafter, a hearing was held before an ALJ on June 21, 2017. On August 7, 2017, the ALJ issued a written decision denying the Plaintiff's applications.

In his decision, the ALJ followed the sequential evaluation process for assessing disability claims.[1]  At Step 1, the ALJ found that the Plaintiff had not been engaged in substantial gainful activity since the claimed onset date.  At Step 2, the ALJ determined that the Plaintiff has multiple severe impairments, which included bilateral hearing loss with tinnitus, major depressive disorder, and generalized anxiety disorder.  At Step 3, the ALJ concluded that the Plaintiff does not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1.  At Step 4, the ALJ concluded that the Plaintiff has a residual functional capacity ("RFC") to perform medium work, subject to certain limitations.  The ALJ further found that the Plaintiff has the RFC to perform his past relevant work as a Miller I.  At Step 5, the ALJ further concluded that there are significant number of jobs in the national economy that the Plaintiff could perform in addition to his past relevant work.  As a result, the ALJ found that the Plaintiff was not disabled within the meaning of the Act.  This appeal followed.

**Discussion**

The Plaintiff challenges the ALJ's analysis at Steps 2, 4, and 5.  First, the Plaintiff argues that the ALJ erred in finding that his knee and shoulder impairments were not severe and by not determining his pain level from these impairments.  Next, the Plaintiff argues that the ALJ erred

---

[1] Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability.  *See* 20 C.F.R. § 404.1520.  In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has a "severe impairment" which limits her mental or physical ability to do basic work activities; (3) if such a "severe impairment" is established, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity to perform her past work; (5) if the claimant is unable to perform her past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform.  20 C.F.R. 404.1520(a)(4)(i)-(v).  The claimant bears the burden of proof with respect to Step 1 through Step 4, while the Commissioner bears the burden of proof as to Step 5.  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008); *McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

in his RFC determination because he did not adequately account for his physical impairments, his communication limitations due to his hearing loss and tinnitus, the frequency of his likely off-task behavior, and his difficulties interacting with the public stemming from his mental health impairments. Finally, the Plaintiff argues that the ALJ misidentified his past relevant work and that he further cannot perform the medium-work jobs identified by the ALJ at Step 5.

The Commissioner responds that the ALJ's decision at each of these steps is supported by substantial evidence in the record. Specifically, the Commissioner asserts that the Plaintiff's physical impairments, aside from his hearing impairment, are not severe because they do not significantly limit the Plaintiff's basic work activities. Moreover, even if the ALJ erred by not finding these impairments to be severe, this error was harmless because the ALJ expressly considered these impairments in his RFC determination and the ALJ's RFC determination is otherwise supported by substantial evidence in the record. Finally, the Commissioner disclaims any error in the ALJ's identification of the Plaintiff's past relevant work as Miller I and further contends that, even if this was error, it was harmless because the ALJ identified multiple jobs that the Plaintiff could perform in the national economy at Step 5.

**Step 2 — "Severe" Impairments**

The Court need not determine whether the Plaintiff's physical impairments to his knee or shoulder were "severe" because any error in this regard is harmless. At Step Two, if the ALJ finds any impairment to be severe, "the question [of] whether the ALJ characterized any other alleged impairment as severe or not severe is of little consequence." *Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 402 (D. Conn. 2012) (quoting *Pompa v. Comm'r of Soc. Sec.*, 73 Fed. Appx. 801, 803 (6th Cir. 2003)), *aff'd*, 515 Fed. Appx. 32 (2d Cir. 2013) (summary order). "Under the regulations, once the ALJ determines that a claimant has at least one severe impairment, the ALJ must consider

all impairments, severe and non-severe, in the remaining steps." *Pompa*, 73 Fed. Appx. at 803 (citing 20 C.F.R. § 404.1545(e)). Therefore, where the ALJ considers all impairments at later stages of the analysis, failure to find a particular impairment "severe" at Step Two, even if error, is harmless error. *Rivera v. Colvin*, 592 Fed. Appx. 32, 33 (2d Cir. 2015) (summary order) ("even assuming that the ALJ erred at Step Two, this error was harmless, as the ALJ considered both Rivera's severe and non-severe impairments as he worked through the later steps"); *Reices-Colon v. Astrue*, 523 Fed. Appx. 796, 798 (2d Cir. 2013) (summary order) ("Because these [non-severe] conditions were considered during the subsequent steps, any error was harmless.").

Here, the ALJ fully considered the Plaintiff's knee or shoulder impairments in reaching his determination as to the Plaintiff's RFC. When explaining his RFC determination, the ALJ specifically noted that the Plaintiff felt he could not work "due to his mental illness and **his history of left hip replacement surgery, right shoulder surgery and the osteoarthritis in his right knee**." (R. 17) (emphasis added). The ALJ considered that the Plaintiff "reported that walking down stairs was more painful for him than climbing stairs and he tried to walk on level ground. He stated his hip felt like it was going to pop out and his right shoulder made a gruesome noise." (*Id.*) The ALJ also considered the Plaintiff's testimony regarding his ability to walk, the weight he could lift, and the impact of sitting or standing for too long on his legs. (*Id.*) Following a discussion of all of these and other issues, the ALJ concluded that the Plaintiff's medically determinable impairments, which clearly included his knee and shoulder, could reasonably be expected to cause the alleged symptoms, but that the Plaintiff's statements regarding the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record. . . ." (R. 18.) In assessing the Plaintiff's testimony, the ALJ noted that the pain management reports from the United States Department of Veteran Affairs

reflect that the Plaintiff was working out regularly and controlling his pain with over the counter medications. The Plaintiff further reported to treatment providers that exercise alleviated his symptoms, and the providers noted that the Plaintiff was meeting his treatment goals.

A review of the record and the ALJ decision make manifest that the ALJ considered the knee and shoulder impairments when determining the Plaintiff's RFC. Even if these impairments might be considered severe, any error in failing to find them severe is harmless.

### Step 3 — The Plaintiff's Residual Functional Capacity

The ALJ determined that the Plaintiff had the residual functional capacity:

> to perform the full range of medium work . . . except that person can only frequently climb ramps and stairs, occasionally climb ladders, ropers or scaffolds, can frequently balance, frequently stoop, frequently kneel, occasionally crouch and frequently crawl, can perform simple, routine tasks, use judgment limited to simple work related decisions, deal with routine changes in the work setting, can have no exposure to unprotected heights or moving mechanical parts.

(R. 17.)

The ALJ provided a detailed and thorough explanation for this RFC determination, citing to the evidence of record that supported it. The Plaintiff first contends that his physical limitations are far greater than those accounted for in the RFC. But the ALJ did impose several postural limitations in light of the Plaintiff's testimony regarding his knee and shoulder impairments. Although the restrictions are not as significant as the Plaintiff would have liked, the limitations are in line with the evidence in the medical record. For example, during the relevant time period, the Plaintiff reported to his treatment providers that he worked out five days per week, that he was able to treat his pain with Aleve and tiger balm, and that he was meeting his treatment goals, including his walking goals. The record is also riddled with missed medical appointments, unanswered messages, and inconsistent cooperation with treatment, to include physical therapy.

In addition, the Plaintiff's principal complaints to his treatment providers related to his mental health, hearing impairments, and sleep issues, not his physical pain. Indeed, when the Plaintiff initially applied for disability benefits, he did not list his knee or shoulder impairments as conditions that limited his ability to work; he listed only his mental health and hearing impairments. Finally, the ALJ noted that "[n]one of the claimant's treating sources placed any physical limitations on him, which were greater than those contained within the physical residual capacity." (R.19.) In sum, the ALJ's determination regarding the physical limitations contained in the RFC was supported by substantial evidence.

The Plaintiff next asserts that the ALJ failed to account adequately for his communication limitations due to hearing loss and tinnitus. Again, the ALJ did recognize some of the Plaintiff's hearing limitations by imposing environmental restrictions, such as no exposure to unprotected heights. But the ALJ did not agree with the Plaintiff that greater restrictions were necessary because such a conclusion was inconsistent with the medical record. For example, the Plaintiff's medical records revealed that his hearing improved when he received hearing aids in 2015. In addition, the medical records do not reflect that the Plaintiff's treatment providers had any difficulty communicating with him despite his hearing limitations, and Plaintiff also told his treatment providers during education surveys that he prefers verbal learning and was willing to, and did in fact, consult with a pain specialist via video-teleconference. The Court is further mindful that the ALJ had the benefit of observing and talking with the Plaintiff at the hearing. Although the Plaintiff occasionally asked the ALJ to repeat questions, it does not appear that the Plaintiff had any significant limitations to his ability to communicate with the ALJ, and the ALJ made no note of experiencing or observing such difficulties. For these reasons, the ALJ did not

err by not including communication limitations in the Plaintiff's RFC. The limitations he did include were supported by substantial evidence.

Finally, the Plaintiff argues that the ALJ erred in his RFC analysis because he did not adequately account for off-task behavior or impose a public contact limitation both of which, he asserts, are necessary due to his mental health impairments. The Plaintiff cites to the mental RFC questionnaire completed by his treating psychiatrist, Dr. Pavle Joksovic, and the findings of the state agency consultants as support for these limitations. But these records do not compel inclusion of these limitations. Dr. Joksovic indicated that the Plaintiff sometimes had problems with or had reduced abilities in certain areas, such as coping skills and performing certain tasks. By and large, however, Dr. Joksovic reported that the Plaintiff had between average and much better than average mental functionality. Dr. Joksovic also indicated that the Plaintiff had an average ability to persist in simple activities and better than average functionality when carrying out single-step instructions and performing basic activities at a reasonable pace. The state agency consultants rendered similar opinions. The ALJ gave weight to these opinions and incorporated them into his RFC by restricting the Plaintiff to simple and routine tasks, stating that the Plaintiff could use his judgment only as to simple, work-related tasks, and limiting him to dealing with only routine changes in work settings.

The opinions of Dr. Joksovic and the state agency consultants do not support the public contact prohibition urged by the Plaintiff either. Dr. Joksovic indicated that the Plaintiff had an average ability to interact appropriately with others, ask questions, request assistance, and interact with people in positions of authority. The state agency consultants also found that the Plaintiff had no social interaction limitations and that he was not significantly limited in his ability to work

with or in proximity to others. Moreover, as previously indicated, the Plaintiff's treatment notes do not reflect that he had difficulty interacting with his treatment providers.

For the foregoing reasons the Court finds that the RFC determination is supported by substantial evidence in the record.

**Step 4 and Step 5**

Because the Court concludes that the ALJ did not err in his RFC determination, the Court also rejects the Plaintiff's arguments regarding the ALJ's analysis at Step 4 and Step 5. First, any error the ALJ made at Step 4 when determining Plaintiff's ability to perform his past relevant work is harmless because the ALJ proceed to Step 5 notwithstanding his finding that the Plaintiff could perform his past relevant work. *Miller v. Colvin*, No. 7:12-cv-00375 (GLS), 2013 WL 1760856, at *5 (N.D.N.Y. Apr. 24, 2013) ("a deficiency in an ALJ's step-four analysis does not require remand if the ALJ subsequently made a correct ruling at step five"); *e.g.*, *Johnson v. Astrue,* No. 07-cv-00647, 2009 WL 1650415, at *6 (W.D.N.Y. June 12, 2009) (explaining that failure to properly examine past relevant work is harmless when ALJ makes a correct ruling at Step Five); *see Hunter v. Colvin*, No. 13-cv-00650-S, 2014 WL 4923103, at *4 (W.D.N.Y. Sept. 30, 2014) ("A step four error is considered harmless only where the ALJ nonetheless proceeds to perform a step five analysis."). Second, the challenge that the Plaintiff raises to the ALJ's analysis at Step 5 is the same as the argument advanced regarding the RFC, an argument this Court has already rejected.

Notwithstanding the foregoing, the ALJ's analysis at Step 5 is also supported by substantial evidence in the record. The vocational expert testified as to three additional jobs someone with Plaintiff's RFC could perform, aside from Miller I, as well as the frequency with which such jobs occur in the national economy. The ALJ was permitted to rely upon this testimony and the

testimony provides substantial evidence for the findings made at Step 5.  *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).

**Conclusion**

For all of the foregoing reasons, the ALJ's determination that the Plaintiff was not disabled within the meaning of the Act is supported by substantial evidence and not in error.  The Plaintiff's Motion to Reverse [ECF No. 26] is DENIED and the Commissioner's Motion to Affirm [ECF No. 27] is GRANTED.

**SO ORDERED** at Bridgeport, Connecticut, this 23rd day of September 2019.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE